[No. H008214. Sixth Dist. Nov. 14, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE AYALA ESCOBAR, Defendant and Appellant.

**COUNSEL**

Kenneth H. Nordin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman, Sharon G. Birenbaum, Christopher W. Grove and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**AGLIANO, P. J.**—The issue in this appeal is whether conviction of violating Vehicle Code section 20001, commonly referred to as "hit and run," may justify a restitution order requiring the defendant to pay for the injury caused by the underlying accident. As we shall explain, we conclude that conviction of such offense alone is legally insufficient to support such an order.

### Facts

Appellant Jose Ayala Escobar was accused of violating Vehicle Code section 20001[1] (leaving the scene of an accident involving injury without fulfilling the requirements of sections 20003 and 20004), section 31 (giving false information to a peace officer), and section 12500 (driving without a license).

Appellant pled guilty to violating section 20001, the "hit-and-run" offense of leaving the scene of an accident involving injury. At sentencing, the trial court dismissed the remaining misdemeanor counts, suspended imposition of sentence, and granted four years of felony probation. As a condition of probation the court revoked appellant's driver's license for two years and ordered appellant to serve ninety days in county jail. The court further ordered appellant to pay restitution to the victims of the accident in an amount later determined to be $2,000, as well as a restitution fund fine of $100.

According to the evidence presented at the restitution part of the sentencing hearing, appellant made a left turn at an intersection, driving his Cadillac across two lanes of a street in front of a Buick traveling over a rise from the opposite direction at 55 miles per hour. The Buick struck the Cadillac and then collided with a van stopped at the intersection on the adjacent street. Appellant left the scene. When he was located at his residence several hours later, appellant denied involvement in the accident and was unable to produce a driver's license.

Both the van and the Buick were damaged in the accident. The owner of the van estimated her total out-of-pocket loss to be approximately $50. The driver of the Buick also sustained personal injuries resulting in $1,950 in lost wages.

---

[1]All further statutory references are to the Vehicle Code unless otherwise indicated.

## Discussion

 Appellant contends the order of restitution was tantamount to an assignment of civil liability in violation of his civil due process rights. We agree.

 Penal Code section 1203.1 grants trial courts broad discretion in prescribing conditions of probation, including restitution. (*People* v. *Scroggins* (1987) 191 Cal.App.3d 502, 507 [236 Cal.Rptr. 569].) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) To be valid, however, a condition of probation must serve a purpose specified in Penal Code section 1203.1. The primary objective of this section is to rehabilitate the offender by "making [him] understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." (*People* v. *Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97].)

For a restitution order to have such an effect, it must directly relate to the crime the defendant has committed. (17 Cal.3d at p. 622.) If the loss does not result from a crime of which the defendant was convicted, the act must have been committed with the same state of mind as the offense of which he was convicted. (*Ibid.*; *People* v. *Goulart* (1990) 224 Cal.App.3d 71, 79 [273 Cal.Rptr. 477].) "No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime." (*People* v. *Richards, supra,* 17 Cal.3d at p. 622.)

 In this case the trial court determined that appellant was "criminally responsible" for the accident and therefore could be ordered to pay restitution to the victims. In discussing this finding the court explained to defense counsel: "You don't see the criminal responsibility for the hitting. He is over here completely out of the lane of traffic and he cuts over in front of a car coming down and cuts in front of him. . . . He is responsible. If he went to traffic Court and was convicted of failure to yield and failure to yield the right-of-way, that would be criminal responsibility for the accident, right?"

Relying on *People* v. *Walmsley* (1985) 168 Cal.App.3d 636 [214 Cal.Rptr. 170], the People argue the restitution order was justified by the trial court's finding that appellant was criminally responsible for the accident.

In *Walmsley*, the defendant pled guilty to hit-and-run driving involving injury. In exchange, the trial court dismissed, subject to a *Harvey*[2] waiver, one count of driving under the influence of an alcoholic beverage and a drug and causing injury (Veh. Code, § 23153, subd. (a)), and one count of driving without a valid driver's license (Veh. Code, § 12500, subd. (a)). Among the conditions of probation was the requirement that the defendant make restitution to the victim.

The appellate court upheld this condition, stating that "under Vehicle Code section 20001 there can be no conviction unless the defendant has been involved in an injury-causing accident. Moreover, as the Attorney General points out: 'The gravamen of the offense of hit-and-run driving is the offender's attempt to evade responsibility for his actions while driving a motor vehicle. . . . It is difficult to imagine a condition of probation more closely linked with rehabilitation of the offender than a condition requiring him to accept the very responsibility he criminally attempted to evade.' " (168 Cal.App.3d at p. 639.)

The *Walmsley* court attempted to distinguish *People* v. *Richards, supra,* 17 Cal.3d 614 by pointing out that in *Richards* the defendant was acquitted of the count on which restitution was based, so that the only purpose to be served by restitution was the resolution of civil liability. "In contrast, here, there was not an acquittal but a guilty plea. Restitution was ordered to the victim involved in the crime to which Walmsley pled guilty, i.e., the person injured in the hit-and-run." (168 Cal.App.3d at p. 640.) Thus, the court concluded that "restitution was clearly related to the conduct for which Walmsley pled guilty." (*Ibid.*)

We respectfully disagree with this reasoning. The court's conclusion is based on the assumption that the hit-and-run offender is responsible not only for the "running" but also for the "hitting." The gravamen of a section 20001 offense, however, is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid. Thus, a plea of guilty to a "hit-and-run" offense admits responsibility for leaving the scene but not for causing injury. Restitution is proper only to the extent that the victim's injuries are caused or exacerbated by the offender's leaving the scene.

*People* v. *Corners* (1985) 176 Cal.App.3d 139 [221 Cal.Rptr. 387], illustrates this distinction. There, the defendant was accused of both assault with a deadly weapon by use of an automobile and leaving the scene of an

---

[2]*People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d ·396].

injury-accident. A jury found the defendant guilty of the section 20001 violation but acquitted him of the assault charge.

The trial court denied the People's request to condition probation on payment of restitution to the injured victim, and the appellate court affirmed. Since the defendant had been exonerated of any wrongdoing in the accident, the court explained, restitution for the injuries caused by the accident would have been inappropriate. "Although a violation of section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' ■ The legislative purpose of sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself. . . . [Citations.] Commission of the crime gives rise to civil liability for damages only if the act of leaving the scene proximately causes *further* injury or death." (176 Cal.App.3d at p. 148.)

Since there was no evidence that Corners' criminal conduct aggravated the victim's injuries, or evidence that he had the same state of mind when he struck the victim as when he unlawfully left the scene, any order of restitution would have been tantamount to an assignment of civil liability.

In reaching this result the *Corners* court expressed agreement with a decision by the appellate department of the superior court in *People* v. *O'Rourke* (1980) 105 Cal.App.3d Supp.1 [165 Cal.Rptr. 92]. In that case the defendant pled guilty to leaving the scene of an accident in which property damage had occurred (§ 20002). The appellate department reversed the trial court's restitution order requiring payment for the damage caused by the accident, pointing out that the damage "was caused by acts which occurred prior to the criminal act, not as a result of the criminal act." (105 Cal.App.3d at p. Supp. 4.) The court also observed that absent specific evidence to the contrary, "[t]he state of mind of a defendant at the time he flees from the scene of an accident is obviously significantly different from his state of mind immediately prior to the collision . . . ." (*Id.* at p. Supp. 5.) Thus, no rehabilitative purpose could be served by requiring restitution for the unrelated noncriminal conduct occurring prior to the defendant's unlawful flight. (Accord, *People* v. *Taylor* (1986) 179 Cal.App.3d Supp.1, Supp. 12 [225 Cal.Rptr. 430] [restitution order invalid where conviction of driving with suspended license not directly related to cause of injury].)

This reasoning is applicable to the instant case. At the plea hearing appellant emphasized that he was pleading guilty to "leaving the scene . . . But that's all I'm pleading guilty to."[3] There is no evidence in the record showing a state of mind common to both the act of turning in front of the Buick and the act of leaving the scene without presenting identification or rendering aid. Thus, the effect of the trial court's restitution order was "an attempt to impose civil liability through the back door." (*People* v. *Corners*, *supra*, 176 Cal.App.3d at p. 148.)

The record reflects the trial court's understandable concern for reimbursement of the victims. ■ As the Supreme Court has emphasized, however, the assignment of civil liability at a criminal sentencing proceeding deprives the defendant of the due process safeguards he or she would have received in a civil forum. "Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money." (*People* v. *Richards*, *supra*, 17 Cal.3d at p. 620.)

■ Citing *People* v. *Lafantasie* (1986) 178 Cal.App.3d 758 [224 Cal.Rptr. 13], the People nevertheless argue that a restitution order should be upheld if, as here, the trial court first finds the defendant was "criminally responsible" for the injury to the victim. In *Lafantasie*, decided six months after *Walmsley*, the same appellate division limited the holding of *Walmsley* to its facts. The court expressed its disagreement with any suggestion in *Walmsley* that restitution to a hit-and-run victim is appropriate "without a finding of criminal responsibility for the 'hitting' of the victim, a common state of mind or a finding the act of leaving the scene of the accident proximately causes *further* injury or death." (*Id.* at p. 764.)

The trial court here interpreted this statement to mean that it must determine at the restitution hearing whether appellant was criminally respon-

---

[3]This court, on its own motion, has taken judicial notice of the record in No. H008059, consisting of the hearing at which appellant's plea was taken and this court's affirmance of the resulting judgment. The instant appeal is from the subsequent order of restitution.

sible for the accident. *Lafantasie,* however, did not so hold. In alluding to the required finding of criminal responsibility the court was distinguishing the factual posture of the case from those in which the defendant had already been convicted; it did not authorize sentencing courts to make such a finding. Thus, we conclude the trial court erred by making a determination that appellant was criminally responsible for the victims' injuries in the accident.

There is no authority further justifying the restitution order in the instant case. *People* v. *Walmsley, supra,* 168 Cal.App.3d 636, is inapplicable because its factual posture differs in significant respects from that of the case before us. First, there was no danger in *Walmsley* that the trial court would try to resolve civil liability through a restitution order because a civil default judgment had already been entered against the defendant. Second, the trial court had obtained a *Harvey* waiver from Walmsley at the time of the plea, which permitted it to consider dismissed charges for sentencing purposes. Those dismissed charges included driving under the influence, which could be viewed either as a cause of the victim's injury or, as the court later pointed out, (*People* v. *Lafantasie, supra,* 178 Cal.App.3d at p. 764), as an act committed with the same state of mind as fleeing the scene of the accident.

Here, by contrast, the dismissed charges consisted of giving false information to a peace officer during the subsequent investigation of the accident and driving without a license. Neither of these acts can be considered to have caused the accident.[4] (See *People* v. *Taylor, supra,* 179 Cal.App.3d Supp. 1, Supp. 12 [licensing violations irrelevant to cause of damages].) Furthermore, no *Harvey* waiver was obtained allowing the court to base its restitution order on either of the dismissed counts.[5]

In summary, the trial court improperly ordered appellant to pay for damage that resulted neither from his crime nor from an act performed with the same state of mind as he had in committing the crime. Restitution therefore can serve no rehabilitative purpose here and must be eliminated from the list of conditions of appellant's probation.

---

[4]The trial court's comments in support of its restitution order suggest that if appellant had been convicted of failure to yield the right of way, he would be deemed criminally responsible for the accident. These remarks, however, are purely hypothetical, since appellant was neither charged nor convicted of such an offense.

[5]The People suggest that appellant was informed at the plea hearing that he might be ordered to pay restitution to the victims. This argument is misplaced. In essence appellant was advised only that he could be required to pay for any damage caused by the crime to which he was pleading guilty. The record of the plea hearing discloses no waiver permitting the court to include the dismissed charges or any other related acts in the scope of its sentencing decision. (See Pen. Code, § 1192.3; *People* v. *Harvey, supra,* 25 Cal.3d 754.)

*Disposition*

The postjudgment order requiring appellant to pay $2,000 in restitution is reversed.

Capaccioli, J., and Elia, J., concurred.

A petition for a rehearing was denied Decenber 13, 1991.