[No. D045636. Fourth Dist., Div. One. Feb. 6, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTY LEWIS RUBICS, Defendant and Appellant.

COUNSEL

Diane Nichols, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

NARES, J.—Marty Lewis Rubics pleaded guilty to one count of felony hit and run under Vehicle Code[1] section 20001, subdivision (a), and an allegation under section 20001, subdivision (b)(2), that the accident resulted in death. The court sentenced Rubics to a term of three years in prison and ordered him to pay $44,414 in funeral expenses as direct restitution to the victim's family.

■ On appeal Rubics asserts that the court erred in ordering restitution because restitution is limited to losses incurred as a result of the commission of the crime, and the economic loss to the victim's family was caused by the accident, not his criminal conduct in leaving the scene of the accident. Rubics also contends that even if restitution were permissible, there is insufficient evidence that he caused the accident and the victim's resulting death. We conclude that because an element of the crime of felony hit and run under section 20001, subdivisions (a) and (b)(2) is a defendant's involvement in an accident resulting in the injury or death of another, restitution is proper in such a situation because the loss was incurred as a result of the commission of the crime. We also hold that substantial evidence supports the court's finding that the defendant Marty Lewis Rubics caused the accident and the victim's resulting death.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Facts Underlying Crime*

On the morning of July 30, 2004, Rubics took one hit of marijuana at approximately 6:15 a.m. and then drove to the beach where he drank five

---

[1] All further statutory references are to the Vehicle Code unless otherwise specified.

[2] Because Rubics pleaded guilty, we take the factual background from the probation report and testimony at the sentencing hearing.

beers and smoked a "bowl" of marijuana. Rubics left the beach to drive home. He approached the intersection of Thibido Road and Hilo Way in Vista, paused at a stop sign, and pulled out to make a left turn onto Thibido Road. As he was making the turn, he collided with a motorcycle driven by Shane Casey. Based upon an accident reconstruction, Casey was traveling approximately 64 miles per hour in a 40-mile-per-hour zone. Casey attempted to avoid Rubics's truck by swerving into oncoming traffic lanes, but was unable to do so. Rubics fled the scene of the accident.

Two witnesses stopped to assist Casey. One left the scene to follow Rubics, and the other, John Sikes, stayed with Casey. Casey was still breathing and his eyes were still open when Sikes reached him. Sikes tried to comfort and encourage him. Although paramedics arrived quickly, Casey was pronounced dead at the scene.

Rubics never contacted police. He was not identified until 10 days after the accident when his vehicle information was released on television, and Casey's family offered a $5,000 reward. When police contacted Rubics at his home, he denied any involvement. Sikes positively identified Rubics's truck as the one involved in the accident. Police did not arrest Rubics at that time, but impounded his truck.

When Rubics contacted police eight days later to request release of his truck, he was arrested. Rubics then admitted to police that he had been involved in the accident and that he had consumed five beers and marijuana that morning. He claimed that he thought he had hit a small car and left the scene because he was afraid that he was going to be arrested for driving under the influence. He also admitted that he fixed the front bumper on his truck and purchased a new headlight and trim pieces to cover up the damage to his vehicle.

### B. *Guilty Plea*

In his written guilty plea to felony hit and run, Rubics admitted that he "was *involved in an injury accident resulting in death to another* and did not stop to identify myself or render reasonable assistance to the person injured." (Italics added.) At the hearing on his guilty plea, Rubics admitted on the record the same facts:

"[The Court:] You're admitting that on the date in question, sir, *you did drive a vehicle involved in an accident . . . and that accident involved the*

*death of another individual*, and you fled the scene and failed to provide your identity or failed to render assistance to the person injured; is that correct, sir?

"[Rubics:] Yes, ma'am." (Italics added.)

### C. *Sentencing Hearing*

At sentencing, the probation officer recommended that the court, in addition to sentencing Rubics to prison, order restitution to the victim's family for funeral expenses. Rubics asserted that restitution was inappropriate because the hit and run offense was based upon his leaving the scene of the accident and did not cause the victim's death and the related funeral expenses. The court ordered restitution, stating: "With regard to restitution, this is a crime involving fleeing the scene resulting in death. [¶] We don't really know, do we, if [Rubics] had stopped his vehicle and rendered assistance, immediately taken [Casey] to a hospital—we have no way of knowing if that would have made a difference. It may not have. We will never know that. But that's why we have this felony provision in place, because we really want people involved in accidents to take responsibility for their conduct and assist others that are injured. [¶] So I think the restitution ordered is appropriate based upon the death to [Casey] and normal funeral expenses, et cetera, for bringing family members to the funeral."

The court ordered Rubics to pay $44,414 in restitution directly to the victim's mother to pay for funeral expenses.

## DISCUSSION

## I

### *PROPRIETY OF RESTITUTION FOR HIT-AND-RUN CRIME*

Rubics asserts that the court erred in ordering restitution because the economic loss to the victim's family that supported the restitution order was caused by the accident, not his criminal conduct in leaving the scene of the accident. This contention is unavailing.

Article I, section 28, subdivision (b) of the California Constitution provides in part: "It is the unequivocal intention of the People of the State of California that all persons *who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they*

*suffer.* [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section . . . ." (Italics added.)

The Legislature has implemented this constitutional provision in Penal Code section 1202.4, subdivision (a)(1), which provides: "It is the intent of the Legislature that a victim of crime who incurs any economic loss *as a result of the commission of a crime* shall receive restitution directly from any defendant *convicted of that crime.*" (Italics added.)

Here, the court ordered restitution under subdivision (f) of Penal Code section 1202.4, which provides in part: "[I]n every case in which a victim has suffered economic loss *as a result of the defendant's conduct,* the court shall require that the defendant make restitution to the victim or victims in an amount established by court order." (Italics added.)

Thus, in order for the court's restitution order to stand, the funeral expenses for Casey must be a loss incurred "as a result of the commission of a crime" for which Rubics was convicted. (Pen. Code, § 1202.4, subd. (a)(1).) Whether restitution was properly ordered in this case requires an analysis of the elements of section 20001, under which Rubics was convicted.

■ Section 20001, subdivision (a) provides: "The driver of any vehicle *involved in an accident resulting in injury to any person . . . or in the death of any person* shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." (Italics added.) Section 20003 requires the driver involved in an accident resulting in injury or death to stop and provide information and render aid to the victim. (§ 20003, subd. (a).)[3] Section 20004 requires the driver, if there is no police officer present, to immediately report the accident to authorities.[4]

---

[3] Section 20003, subdivision (a) provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. The driver also shall render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person."

[4] Section 20004 provides: "In the event of death of any person resulting from an accident, the driver of any vehicle involved after fulfilling the requirements of this division, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by

As stated above, one element of the crime of hit and run for which Rubics was convicted is that he was "involved in an accident resulting in . . . the death of any person." (§ 20001, subd. (a).) CALJIC No. 12.70, the jury instruction for section 20001, similarly requires the jury to find that Rubics was *"knowingly involved in an accident resulting in [the death of]* [or] [injury to] any person other than [himself]." (Italics added.) That instruction also lists the elements necessary to convict a defendant of felony hit and run as follows: "1. A person while driving a motor vehicle *was involved in an accident resulting in injury to another person*; [¶] 2. *That person knew that an accident had occurred, knew that [he] [she] was involved in the accident and either knew that the other person had been injured or that from the nature of the accident it was probable that another person had been injured*; [¶] 3. That person willfully failed to perform one or more of the following duties: [¶] a. To immediately stop at the scene of the accident; [¶] b. To give [his] [her] name, current residence address, the registration number of the vehicle and the name and current residence of the owner of the vehicle [and the name and current residence of any occupant of the driver's vehicle injured in the accident] to the person injured or to the driver or occupants of the other vehicle, if any, and to any traffic or police officer at the scene of the accident and though requested, failed to show [his] [her] available driver's license; [and] [¶] [c. To render reasonable assistance to a person injured.] [and] [¶] [d. If there was no officer at the scene of the accident to whom to give the information, to report the accident without delay to the nearest office of the Department of the California Highway Patrol or office of a duly authorized police authority and submit with the report the information required in item b.] [¶] . . . [¶] [4. *The accident was a cause of death or permanent, serious injury to the accident victim.*]" (CALJIC No. 12.70, italics added.)

Thus, Rubics's involvement in an accident causing Casey's death is an element of his felony hit-and-run offense. Indeed, Rubics admitted these same facts in his guilty plea. Thus, the elements of section 20001 require Rubics's involvement in the accident and responsibility for the loss incurred.

Focusing on element No. 3 in CALJIC No. 12.70, Rubics asserts that his criminal act was in leaving the scene, and section 20001 does not require a showing that he caused Casey's death and the related funeral expenses. In support of this contention. Rubics cites cases that have held that "[t]he gravamen of a section 20001 offense . . . is not the initial injury of the victim,

---

Section 20003, shall, without delay, report the accident to the nearest office of the Department of the California Highway Patrol or office of a duly authorized police authority and submit with the report the information required by Section 20003."

but leaving the scene without presenting identification or rendering aid." (*People v. Escobar* (1991) 235 Cal.App.3d 1504, 1509 [1 Cal.Rptr.2d 579]; see also *People v. Wood* (2000) 83 Cal.App.4th 862, 866 [100 Cal.Rptr.2d 115].)

That may be a true statement, as far as it goes. However, Rubics reads section 20001, for restitution purposes, too narrowly. As we have discussed, a necessary element of section 20001 is that Rubics was involved in an accident that caused serious injury or death. Thus, although a primary focus of section 20001 may be the act of leaving the scene, a conviction also acknowledges the fleeing driver's responsibility for the damages he or she has caused by being involved in the accident itself.

In support of their argument that the restitution order by the court was proper, the People cite *People v. Carbajal* (1995) 10 Cal.4th 1114, 1119 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*), wherein the California Supreme Court has held it appropriate to order restitution for property damage caused by a hit-and-run driver. However, *Carbajal* involved restitution ordered as a condition of *probation*, not in a case such as this where the defendant is sentenced to state prison. (*Ibid.*) At first blush, the *Carbajal* decision does not appear helpful because courts have far greater leeway in selecting appropriate restitution as a condition of probation. Our Supreme Court has observed that a trial court has broad discretion to impose probation conditions to foster rehabilitation and protect public safety. (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) It stated that probation conditions cannot be invalidated by a reviewing court unless the condition " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Ibid.*) Thus, in imposing restitution as a condition of probation, "[a] court may also consider [in imposing victim restitution] crimes which were charged but dismissed [citation]; uncharged crimes, the existence of which is readily apparent from the facts elicited at trial [citation]; or even charges of which the defendant was acquitted, if justice requires they be considered. [Citation.]" (*People v. Goulart* (1990) 224 Cal.App.3d 71, 79 [273 Cal.Rptr. 477].)

This is because probation is an " ' "act of clemency and grace," ' " not a matter of right. (*People v. McGavock* (1999) 69 Cal.App.4th 332, 337 [81 Cal.Rptr.2d 600].) "[T]he granting of probation is not a right but a privilege, and if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense[,] he is free to refuse probation."

(*People v. Miller* (1974) 256 Cal.App.2d 348, 356 [64 Cal.Rptr. 20]; see also *In re Osslo* (1958) 51 Cal.2d 371, 377 [334 P.2d 1].) Because a defendant has no right to probation, the trial court can impose probation conditions that it could not otherwise impose, so long as the conditions are not invalid under the three *Lent* criteria. It is not limited to damages specifically caused by the crime of which the defendant was convicted.

■ An entirely different set of constitutional considerations comes into play where, as here, the defendant is sentenced to prison. The constitutional guaranty of a jury trial and due process requires that the jury decide all material issues in support of the charges. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277–278 [124 L.Ed.2d 182 113 S.Ct. 2078]; *People v. Flood* (1998) 18 Cal.4th 470, 479–480 [76 Cal.Rptr.2d 180, 957 P.2d 869].) A corollary to this guaranty is that a defendant will not be punished for a crime for which a jury has not determined the defendant's guilt. For example, a trial judge cannot impose additional punishment on a defendant because the judge believes a jury erred in acquitting him or her of one charge. (*People v. Gragg* (1989) 216 Cal.App.3d 32, 44–45 [264 Cal.Rptr. 765] ["What is prohibited is the unwarranted practice of imposing extra punishment on a defendant convicted of one charge based on a conclusion by the judge the jury erred in acquitting the defendant on any companion charges"].) Thus, in our case, restitution must be for economic damages resulting from the crime of which Rubics was convicted, not merely those "reasonably related" to the crime.

Although *Carbajal* involved restitution as a condition of probation, language from that decision is still helpful to our analysis of whether the restitution order was appropriate in this case. In *Carbajal* the high court held that a trial court may order a defendant convicted of hit and run to pay, as a condition of probation, "restitution to the owner of the property damaged in the accident from which the defendant unlawfully fled." (*Carbajal, supra,* 10 Cal.4th at p. 1119.) The court reasoned that the damage the defendant caused to the parked car during the hit and run accident was " 'reasonably related' " to the crime of hit and run. (*Id.* at p. 1123.) As the court in *Carbajal* put it, "By leaving the scene of the accident, the fleeing driver deprives the nonfleeing driver of his or her right to have responsibility for the accident adjudicated in an orderly way according to the rules of law. This commonly entails a real, economic loss, not just an abstract affront. Among other things, the crime imposes on the nonfleeing driver the additional costs of locating the fleeing driver and, in some cases, the total costs of the accident. 'The cost of a "hit and run" violation is paid for by *every* law-abiding driver in the form of increased insurance premiums. The crime with which the defendant is charged

is complete upon the "running" whether or not his conduct caused substantial or minimal (or indeed any) damage or injury; it is the *running* which offends public policy.' [Citation.]" (*Id.* at p. 1124.)

The court also concluded that in the probation setting "restitution is also related to the goal of deterring future criminality. By seeking to force the defendant to accept the responsibility he attempted to evade by leaving the scene of the accident without identifying himself, the restitution condition acts both as a deterrent to future attempts to evade his legal and financial duties as a motorist and as a rehabilitative measure tailored to correct the behavior leading to his conviction." (*Carbajal, supra,* 10 Cal.4th at p. 1124.)

Moreover, the high court in *Carbajal* also indicated that because the defendant there pleaded no contest to the hit and run, he was *directly responsible* for the loss incurred. As the high court stated, in such a situation "there is no question as to defendant's responsibility for the loss." (*Carbajal, supra,* 10 Cal.4th at p. 1124.) The court elsewhere noted that " '[r]estitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, *the harm his actions have caused.*' " (*Ibid.,* quoting *Kelly v. Robinson* (1986) 479 U.S. 36, 49, fn. 10 [93 L.Ed.2d 216, 107 S.Ct. 353], italics added.)

Thus, *Carbajal* supports the conclusion that the court's restitution order was proper in this case. As the *Carbajal* court discussed, one purpose of section 20001 is to make a driver face up to taking responsibility for the damages caused by the accident and the effect on society when he or she flees the scene without taking responsibility for that accident. Moreover, in a situation like this, where a defendant pleads guilty to felony hit and run, he or she admits involvement in the accident that caused the death or serious injury. Because Rubics was involved in an accident that caused Casey's death, it was proper for the court to order him to pay Casey's funeral expenses because the "victim has suffered economic loss as a result of the defendant's conduct . . . ." (Pen. Code, § 1202.4, subd. (f).) We conclude that the court did not err in ordering restitution for the victim Casey's funeral expenses.

## II

### *THE COURT DID NOT ABUSE ITS DISCRETION IN ORDERING RESTITUTION*

Rubics asserts that even if restitution were permissible, the court abused its discretion in ordering him to pay funeral expenses as there is no evidence that he caused the accident and the victim's resulting death. We reject this contention.

## A. *Standard of Review*

Trial courts have broad discretion to order victim restitution and such an order will not be reversed if there is a "factual and rational basis for the amount of restitution." (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679].) A court's discretion is not unlimited, however, and an order will be reversed if it is arbitrary and capricious. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045 [29 Cal.Rptr.3d 120].)

## B. *Analysis*

At the sentencing hearing, the court indicated that it had reviewed and considered the probation officer's report and recommendation. That report provided a detailed account of the accident and Rubics's conduct. The report stated that although Casey was traveling at a high rate of speed when he approached the intersection, Rubics made an unsafe left turn onto the street. Casey attempted to avoid the accident by swerving into oncoming traffic lanes, but could not avoid Rubics's vehicle. Rubics immediately left the scene and attempted to conceal evidence of damage to his truck by making repairs. The accident investigator determined that Rubics caused the accident by failing to yield before he turned. This evidence is sufficient to support the court's restitution order.

Rubics points to evidence he submitted at sentencing showing (1) Casey's high rate of speed; (2) he was driving on a suspended license; (3) he had no motorcycle endorsement; and (4) he tested positive for marijuana at the time of the accident. Rubics also points to the conclusions of his own accident reconstructionist that Casey was at fault because of his high rate of speed.

However, Rubics is asking this court to reweigh evidence that the court resolved against him at the sentencing hearing. If there is some evidence to support the court's ruling, disputed or not, we will affirm the court's order. (*People v. Hill* (1998) 17 Cal.4th 800, 849 [72 Cal.Rptr.2d 656, 952 P.2d 673].) The court did not abuse its discretion in ordering Rubics to pay Casey's funeral expenses.[5]

---

[5] Rubics has also requested that we take judicial notice of the California Department of Motor Vehicles Motorcycle Handbook and its discussion of the purpose of motorcycle licensing procedures. However, because this material was not presented to the trial court at sentencing, we decline to take judicial notice of this matter. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242].)

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2006, S141768. George, C. J., did not participate therein.