Filed 6/6/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057976 |
| v. | (Super.Ct.No. FMB1200197) |
| DENNIS TERRY MARTINEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Reversed with directions.

Thomas E. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Dennis Terry Martinez pled guilty to leaving the scene of an accident

(count 1; Veh. Code, § 20001, subd. (a))[1] and admitted the offense constituted a violation of his probation. In return for his plea, the People agreed to the low term of two years' incarceration on count 1 and a concurrent midterm of two years on his violation of probation. The sentencing court later indicated it would not permit the plea to the agreed upon term. The court offered to allow defendant to withdraw his plea and set the matter for a preliminary hearing or proceed with the plea with the understanding the court would sentence defendant to the midterm of three years' imprisonment with a concurrent three-year term for the violation of probation. Defense counsel indicated defendant's acquiescence to the court's proposed disposition.[2]

The court sentenced defendant to the three-year term, but reserved jurisdiction on the issue of victim restitution. After a contested restitution hearing, the court ordered victim restitution in the amount of $425,654.63. On appeal, defendant contends the court abused its discretion in awarding victim restitution for the injuries sustained by the victim because defendant did not plead to any criminal offense regarding the collision which caused those injuries and no factual determination was made that he was responsible for the accident. We reverse the restitution award. The matter is remanded to allow the People to file a motion, in their discretion, for restitution in which they will bear the burden of proving an amount, if any, which reflects the degree to which the victim's

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] No new plea was taken either orally or in writing to reflect the new, agreed upon disposition. Defendant did not personally indicate his acceptance of the new term.

2

injuries were exacerbated, if at all, by defendant's flight.  In all other respects, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY[3]

On April 26, 2012, at approximately 6:30 p.m., defendant, driving his vehicle, and the 12-year-old victim, riding on a scooter, collided in the street.  Defendant stopped his vehicle and checked on the victim.  The victim's mother came screaming over to her son.  Defendant fled when he discovered the victim's injuries might be life threatening.  Defendant was on probation and driving without a license.

The victim was taken to the Intensive Care Unit (ICU) of Loma Linda University Medical Center (LLUMC).  He sustained multiple broken facial bones and a serious head injury resulting in brain swelling.

Within 24 hours of investigation, officers discovered defendant's identity.  Defendant voluntarily came forward thereafter.  He admitted knowing that leaving the scene of the accident was a criminal offense.  Defendant admitted ingesting medical grade marijuana at 8:00 a.m. the day of the accident, but said he no longer felt the effects by 11:00 a.m.  Defendant maintained the collision was an accident.

After defendant's plea, a probation report prepared for sentencing recommended defendant be sentenced to the upper term of four years, conflicting with the disposition agreed upon in the plea agreement.  Defendant's felony probation had been previously

---

[3] The parties stipulated the factual basis for the plea was contained in the felony complaint and police report.  We take a portion of our factual recitation from those sources.

3

revoked once.

The probation officer noted the victim had been released from LLUMC's ICU after two weeks. The victim was transferred to the children's rehabilitation center in Orange County where he had since remained. The victim had no short-term memory and was unable to walk without assistance. The victim was relearning to walk and talk. It was anticipated the victim would undergo 12 weeks of intensive neurological therapy. Defendant had been uninsured at the time of the collision. The bill for the victim's stay at LLUMC alone was $500,000. The victim's mother's insurance deductible was $10,500.

The victim's mother made a statement at defendant's sentencing hearing. She noted "The fact that my son collided with the vehicle was an accident." The victim's mother indicated the victim had "multiple facial fractures, a fractured clavicle[,] and was diagnosed with traumatic brain injury." The victim suffered brain swelling for which doctors had to insert a brain swelling monitor in his skull. The victim had been moved to Orange County on May 11, 2012, and was sent home after five weeks.

Subsequent to sentencing, the parties briefed the issue of whether defendant could be ordered to pay restitution for the medical costs incurred by the victim as a result of the collision. The People noted the victim's bill for his stay at LLUMC alone was $425,654.63. At the contested restitution hearing, the court decided to follow the decision in *People v. Rubics* (2006) 136 Cal.App.4th 452 (Fourth Dist., Div. One) (*Rubics*), which held that a defendant convicted of fleeing the scene of an accident could be ordered to pay restitution for costs incurred by the victim as a result of the collision.

4

The court continued the matter for a hearing on the amount of restitution to order. Counsel filed a stipulation in the amount of $425,654.63 for a victim restitution order. The stipulation reserved defendant's right to appeal the court's determination it could order victim restitution for the results of the accident. The court granted victim restitution in the amount stipulated.

DISCUSSION

Defendant contends the court erred in following *Rubics* because decades of precedent have characterized the illegal act of hit-and-run as fleeing the scene, not causing the actual collision. Thus, because defendant was not convicted for any offense involving responsibility for the actual accident and no factual determination of his responsibility for the collision or the victim's injuries has been made, the court erred in ordering restitution to the victim for treatment of the injuries he received as a result of the accident. We agree.

We review a trial court's order of restitution for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "While we review all restitution orders for abuse of discretion, we note that the scope of a trial court's discretion is broader when restitution is imposed as a condition of probation." (*Ibid.*, fn. 7.) "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (Pen. Code, § 1202.4, subd. (a)(1).)

Penal Code "section 1202.4 contains no provision that permits an award of restitution for losses caused by uncharged crimes when the defendant is sentenced to state

5

prison." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1248.)  The rationale that restitution may be imposed for economic loss not directly resulting from the commission of a crime for which a defendant has been convicted "is inapplicable to a nonprobationary sentence, in which the broad discretion to impose probationary conditions does not exist." (*Ibid.*)  "[W]hen a defendant is sentenced to state prison, [Penal Code] section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted." (*Id*. at p. 1246 [Remanding for deletion a restitutionary award ordered for acts occurring before the crimes for which the defendants were convicted].)

"The gravamen of a section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.  Thus, a plea of guilty to a 'hit-and-run' offense admits responsibility for leaving the scene but not for causing injury.  Restitution is proper only to the extent that the victim's injuries are caused or exacerbated by the offender's leaving the scene." (*People v. Escobar* (1991) 235 Cal.App.3d 1504, 1508 [Restitutionary award of $2,000 for personal injuries resulting in lost wages and out of pocket expenses in a hit-and-run case reversed as "tantamount to an assignment of civil liability in violation of [defendant's] civil due process rights."]; accord *People v. Valdez* (2010) 189 Cal.App.4th 82, 85, 90 [Noting this "'decisional law that unequivocally holds that the purpose of section 20001, subdivision (a) is to punish "not the 'hitting' but the 'running'"'"]; *People v. Wood* (2000) 83 Cal.App.4th 862, 866; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1340 [declining to follow *Rubics*]; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1124; contra. *Rubics*, *supra*.)

6

The court below understandably relied on *Rubics* in rendering its judgment that defendant could be ordered to pay restitution for the effects of the collision. (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4 ["As a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so."].) Nevertheless, we find *Rubics* factually distinguishable from the instant case. Moreover, to the extent *Rubics* could be viewed as binding on the court below, we disagree with its holding. Unlike the lower court, we are not bound to follow *Rubics*. (*Fenelon v. Superior Court* (1990) 223 Cal.App.3d 1476, 1483, abrogated on another ground in *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 368.) We find that *Rubics* is an anomaly in an otherwise "unbroken line of cases stretching back more than 50 years." (*People v. Valdez, supra,* 189 Cal.App.4th at pp. 85, 89.) Thus, we hold that a court cannot order a defendant pay victim restitution when sentenced to prison for the effects of a collision, not exacerbated by his leaving, when the defendant is solely convicted of fleeing the scene and no factual predicate for the defendant's responsibility for the accident can be found in the record. (*People v. Escobar, supra,* 235 Cal.App.3d at p. 1509 ["Restitution is proper only to the extent that the victim's injuries are caused or exacerbated by the offender's leaving the scene."].)

In the first instance, *Rubics* is distinguishable from the present case for a number of reasons. First, much of *Rubics*'s analysis of the issue was premised on the fact that, in its case, the defendant had not only been convicted of fleeing the scene (§ 20001, subd. (a)), but had also admitted an allegation under section 20001, subdivision (b)(2), that the accident had resulted in death. (*Rubics*, *supra*, 136 Cal.App.4th at p. 454.) *Rubics* noted

7

one of the elements of the crime of which the defendant pled guilty required that it resulted in the death of any person. (*Id*. at p. 458.) It noted the jury instruction for the offense reflected knowing involvement in an accident resulting in the death of another person. (*Ibid*.) It summarized its analysis by noting the defendant's "involvement in an accident causing [] death is an element of his felony hit-and-run offense." (*Ibid*.) Here, defendant did not admit an allegation the accident resulted in death because no such allegation was charged as no one was killed.

Second, the restitution awarded in this case was of a different kind and in a much larger amount than that awarded in *Rubics*. The lower court in *Rubics* awarded $44,414 to the victim's family for funeral expenses. (*Rubics*, *supra*, 136 Cal.App.4th at p. 456.) Here, the court awarded $425,654.63, apparently for the victim's stay at LLUMC. Here, it would be incongruous to apply the *Rubics* rule when the *Rubics* case involved the death of the victim while the victim in the instant case did not die. In other words, a defendant should not benefit from the fact that the victim in his case has died, thereby resulting in a lesser amount of victim restitution than if that victim had lived, but required extended, expensive hospitalization and care.

Third, there was a factual predicate for determining the defendant's fault in the accident at issue in *Rubics*. The defendant in *Rubics* admitted to smoking copious amounts of marijuana and drinking five beers before the collision. (*Rubics*, *supra*, 136 Cal.App.4th at p. 455.) The defendant failed to stop at a stop sign, made an unsafe left turn, and collided with the victim's motorcycle. (*Id*. at pp. 455, 462.) The accident investigator determined the defendant caused the accident by failing to yield to the

victim. (*Id*. at p. 462.) The defendant admitted leaving the scene of the accident "because he was afraid that he was going to be arrested for driving under the influence." (*Id*. at p. 455.) Thus, the defendant in *Rubics* effectively admitted culpability for the collision and his responsibility had also been independently determined.

We are in no way here making any factual determination as to whether defendant was responsible for the collision which resulted in the victim's injuries and damages. Nevertheless, we note that no evidence below was adduced that defendant bore any culpability for the collision itself or that his flight exacerbated the injuries to the victim. The victim apparently collided with the defendant's vehicle while riding his scooter in the street. Although defendant admitted to using marijuana, he reported having done so at 8:00 a.m. on the day of the accident. He indicated he had stopped feeling its effects by 11:00 a.m. on that day. The collision occurred at 6:30 p.m., 10 and a half hours after using the intoxicant and seven and a half hours after its effects had worn off. Both defendant and the victim's mother described the collision as an accident.

Indeed, in *People v. Woods* (2008) 161 Cal.App.4th 1045, the court distinguished *Rubics* on this very basis, i.e., that the fleeing driver may only be held responsible "'*for the damages he or she has caused* by being involved in the accident itself.' [Citation.]" (*Id*. at p. 1053.) Similarly, the court in *Corenbaum v. Lampkin, supra,* 215 Cal.App.4th 1308, observed "[t]he occurrence of an injury accident is a condition precedent to the imposition of duties upon the driver under [section] 20001, subdivision (a) . . ., but is not an element of the crime . . . . [Citation.]" (*Id*. at p. 1340.) "To the extent that [*Rubics*] suggested that a conviction under [section] 20001, subdivision (a) is based in part on the

9

defendant's causing or being involved in an injury accident, we decline to follow it . . . . (*Id*. at p. 1341, fn. 22.) Here, there was no evidence defendant caused the accident or exacerbated the victim's injuries by fleeing.

Although we find the decision in *Rubics* factually distinguishable from the present case, we are also cognizant of the broad language in *Rubics* which would appear to make its holding applicable to restitution for any damages sustained by a victim as a result of a hit and run regardless of the facts. Indeed, *Rubics* held that "although a primary focus of section 20001 may be the act of leaving the scene, a conviction also acknowledges the fleeing driver's responsibility for *the damages* he or she has caused by being involved in the accident itself." (*Rubics, supra,* 136 Cal.App.4th at p. 459, italics added.) Similarly, the court held that "because an element of the crime of felony hit and run under section 20001, subdivisions (a) and (b)(2) is a defendant's involvement in an accident resulting in *the injury* or death of another, restitution is proper in such a situation because the loss was incurred as a result of the commission of the crime." (*Id*. at p. 454, italics added.) Thus, the expansive language of *Rubics*'s holding would appear to give trial courts broad discretion to order victim restitution for any damages sustained in a hit-and-run collision regardless of whether the defendant has been convicted of any offense involving his culpability in the collision, without any evidence of his responsibility for the accident, without any evidence that his flight exacerbated the victim's injuries, and in any amount. We disagree with this holding.

Although *Rubics* acknowledged two cases cited to it by defendant which directly

10

contradict its own holding, the court did not distinguish or disagree with either.[4]  Indeed, the court declined to discuss those cases, or any of the others establishing  the "unbroken line of cases stretching back more than 50 years" which ran contrary to its holding. (*People v. Valdez*, *supra*, 139 Cal.App.4th at p. 89; *Rubics*, *supra*, 136 Cal.App.4th at pp. 458-459.)  Instead, *Rubics* relied primarily on the decision of our Supreme Court in *People v. Carbajal, supra,* 10 Cal.4th 1114.  (*Rubics*, *supra*, at pp. 459-461.)

In *Carbajal*, the California Supreme Court held "it is within the trial court's discretion in [] a [hit-and-run] case to *condition probation* on payment of restitution to the owner of the property damaged in the accident from which the defendant unlawfully fled.  A restitution condition in such a case can be reasonably related to the offense underlying the conviction and can serve the purposes of rehabilitating the offender and deterring future criminality." (*People v. Carbajal, supra,* 10 Cal.4th at p. 1119, italics added.)  *Carbajal* acknowledged "that in the context of the hit-and-run statute, the restitution condition may relate to conduct that is not in itself necessarily criminal, i.e., the probationer's driving at the time of the accident."  (*Id.* at p. 1123 [fn. omitted].) Nevertheless, the court held that "a trial court, in the proper exercise of its discretion, may condition *a grant of probation* for a defendant convicted of fleeing the scene of an accident on payment of restitution to the owner of the property damaged in the accident." (*Id.* at pp. 1126-1127, italics added.)

---

**4** The court noted the defendant had exposited both *People v. Escobar, supra,* 235 Cal.App.3d at p. 1509, and *People v. Wood* (2000) 83 Cal.App.4th 862, 866, in support of his contention the court's ordered restitution should be reversed.  (*Rubics*, *supra*, 136 Cal.App.4th at pp. 458-459.)

11

Of course, the primary difference between *Carbajal* and *Rubics* is the former court permitted victim restitution for a collision in a hit-and-run case, regardless of any determination of the defendant's culpability in the collision itself, *only when it was ordered as a condition of probation*. (*People v. Carbajal*, *supra,* 10 Cal.4th at pp. 1119, 1126-1127.) In *Rubics*, the court permitted such victim restitution in a case in which the defendant was sentenced to prison. (*Rubics*, *supra*, 136 Cal.App.4th at p. 454.) *Rubics* acknowledged this difference, but found the policy reasons for permitting an order of such restitution in a probation case did not differ from one in which the court sentenced a defendant to prison. (*Id*. at pp. 459-461.)

*Rubics* discerned *Carbajal*'s overall approval of victim restitution where the damages were reasonably related to the accident. (*Rubics*, *supra,* 136 Cal.App.4th at p. 460.) *Rubics* observed that *Carbajal* concluded restitution is related to the goal of deterring future criminality which the restitution ordered in *Rubics* also served. (*Id*. at p. 461.) It also noted *Carbajal* found restitution ""an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, *the harm his actions have caused*."" [Citations.]" (*Ibid*.) [5] Thus, *Rubics* found *Carbajal* supported "the conclusion that the court's restitution order was proper in this case." (*Ibid*.)

However, an examination of *Carbajal* itself reveals the fact that the underlying court had ordered restitution *as a condition of probation* was not simply a factor in its

---

[5] Though, notably, *Carbajal* made all these determinations within the *People v. Lent* (1975) 45 Cal.3d 481, framework analysis for determining whether *a term or condition of probation* is appropriate. (*People v. Carbajal*, *supra,* 10 Cal.4th at p. 1124.)

12

determination of whether such an order was appropriate, but *the* factor. *Carbajal* observed "California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a *condition of probation* even when the loss was not necessarily caused by the criminal conduct underlying the conviction." (*People v. Carbajal, supra,* 10 Cal.4th at p. 1121, italics added.) As a *condition of probation* "[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*Ibid*.)

*Carbajal* disagreed with the defendant's contention a court could not order victim restitution for losses which did not result from the defendant's criminal acts because the statutory scheme could not "'be construed to limit the authority of the court to grant or deny probation or *provide conditions of probation*.' [Citation.]" (*People v. Carbajal, supra,* 10 Cal.4th at p. 1122.) Thus, it concluded that nothing in constitutional or statutory law "purports to limit or abrogate the trial court's discretion . . . to order restitution as a *condition of probation* where the victim's loss was not the result of the crime underlying the defendant's conviction, but where the trial court finds such restitution will serve one of the purposes" of reformation or rehabilitation inherent in a decision *to grant probation*. (*Ibid*., italics added.) The court spent the remainder of its opinion analyzing whether the ordered victim restitution was appropriate within the context of the *Lent* framework for determining the propriety of conditions of probation. (*Id*. at pp. 1122-1127.) Therefore, *Carbajal* can in no way be construed as authority for the proposition that victim restitution may be ordered in a hit-and-run case for a collision

13

for which the defendant has not been convicted of any criminal offense and no evidence supports the defendant's culpability for the collision or exacerbation of the victim's injuries due to defendant's flight.

Indeed, *Rubics* itself acknowledged that "[a]t first blush, the *Carbajal* decision does not appear helpful because courts have far greater leeway in selecting appropriate restitution as a condition of probation. Our Supreme Court has observed that a trial court has broad discretion to impose probation conditions to foster rehabilitation and protect public safety. [Citation.]" (*Rubics, supra,* 136 Cal.App.4th at p. 459.) In fact, as noted above, it has long been acknowledged that courts retain broader discretion to order victim restitution when it is a *condition of probation.* (*People v. Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.) As *Rubics* further noted, the discretion afforded courts in prescribing conditions of probation is broad "because probation is an ""'act of clemency and grace,'"" not a matter of right. [Citation.] '[T]he granting of probation is not a right but a privilege, and if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense[,] he is free to refuse probation.' [Citations.] Because a defendant has no right to probation, the trial court can impose *probation conditions that it could not otherwise impose, . . .* It is not limited to damages specifically caused by the crime of which the defendant was convicted." (*Rubics,* at pp. 459-460, italics added.)

Here, however, we are not discussing a condition of probation. Rather, the court ordered defendant to pay victim restitution for the collision when he was not convicted of any offense involving responsibility for the collision, no evidence in the record appears to

14

indicate any culpability on his part in the collision, no evidence demonstrates the victim's injuries were exacerbated due to defendant's flight, and the court sentenced defendant to three years' imprisonment. Defendant was not afforded the freedom to refuse the ordered restitution even if he believed it was harsher than the sentence for the substantive offense because he was already sentenced for the substantive offense. Indeed, as *Rubics* further observed "[a]n entirely different set of constitutional considerations comes into play where, as here, the defendant is sentenced to prison. The constitutional guaranty of a jury trial and due process requires that the jury decide all material issues in support of the charges. [Citations.] A corollary to this guaranty is that a defendant will not be punished for a crime for which a jury has not determined the defendant's guilt." (*Rubics*, *supra*, 136 Cal.App.4th at p. 460.) Here, defendant was not afforded any constitutional protections in what amounted to a judicial determination of guilt and liability for the collision. The ordered $425,654.63 in victim restitution would, to many people, be deemed harsh punishment in and of itself.

Indeed, if the People believed defendant guilty for causing the collision, they could have charged defendant for reckless driving (§ 23103), driving under the influence (§ 23152, subd. (a)), or some other charge which would have incorporated at least some culpability for the collision and not just fleeing afterward. If defendant was convicted of such a charge, victim restitution for the collision would then be appropriate. In fact, even if defendant was not convicted of such a charge, but the plea agreement included a

15

*Harvey*[6] waiver, restitution could still be imposed for the consequences of the collision. (*People v. Snow* (2012) 205 Cal.App.4th 932, 937, fn. 5.)  Here, although defendant executed a *Harvey* waiver as part of his plea, there were no other charges in the felony complaint and defendant's plea did incorporate any agreement by the People not to file any further charges.

The People might argue that by fleeing, defendant ensured any evidence of his culpability in the collision was thereby eradicated.  (*People v. Carbajal*, *supra*, 10 Cal.4th at  p. 1124 ["By leaving the scene of the accident, the fleeing driver deprives the nonfleeing driver of his or her right to have responsibility for the accident adjudicated in an orderly way according to the rules of law."])  However, a review of the contents of the police report reveal this is not the case.

At least two individuals witnessed the accident:  the individual who gave police a description of defendant's vehicle and the victim's mother.  If defendant was driving recklessly, evidence from these two sources could have been adduced to establish such. As noted above, mother indicated it was the victim who collided with defendant. Defendant likewise indicated the victim hit defendant's vehicle when the victim failed to stop.  Moreover, defendant's vehicle was found within 24 hours of the accident, apparently before any repairs could have been or were made.  Defendant's vehicle had only two small dents from the accident; no blood was on the car.  A blood draw of defendant was conducted, apparently for toxicology purposes, within 26 hours of the

---

[6] *People v. Harvey* (1979) 25 Cal.3d 754.

accident.  No results of this test appear in the record.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 448, fn. 6 [Information obtained by the social worker in a juvenile dependency case reflected "marijuana's negative [e]ffect on the user's driving skills lasts 'for at least 4-6 hours after smoking a single marijuana cigarette, long after the "high'' is gone.'"])  Unlike in *Rubics*, no evidence of any accident reconstruction appears in the record.  Thus, it would appear the evidence here, or lack thereof, was at best, for the People, inconclusive and, at worst, negated any culpability of defendant for the collision.  Either way, no charges regarding the collision were brought against defendant.  Because no determination regarding defendant's culpability for the collision had been made, restitution for the victim's medical care was an abuse of the court's discretion.

## DISPOSITION

The order granting the victim restitution is reversed.  The matter is remanded to allow the People to file a motion, in their discretion, for restitution in which they will bear the burden of proving an amount, if any, which reflects the degree to which the

17

victim's injuries were exacerbated, if at all, by defendant's flight.  (*People v. Sy* (2014) 223 Cal.App.4th 44, 63 ["[T]he standard of proof at a restitution hearing is by a preponderance of the evidence . . . ."].)

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


McKINSTER
J.


18