Filed 7/29/16  P. v. Bivens CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SPARKLE SKY BIVENS,<br><br>Defendant and Respondent. | B265917<br><br>(Los Angeles County<br>Super. Ct. No. BA413256) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael E. Pastor, Judge.  Affirmed.

Jackie Lacey, District Attorney, Phyllis C. Asayama and Cassandra Thorp, Deputy District Attorneys, for Plaintiff and Appellant.

Ivie, McNeill & Wyatt and Chandler A. Parker for Defendant and Respondent.

_____

The People appeal from an order of the Superior Court of Los Angeles County ordering defendant and respondent Sparkle Sky Bivens to pay the State Compensation Insurance Fund (SCIF) $4,000 in restitution. The People argue that the trial court improperly reduced SCIF's requested $34,154.70 restitution and arbitrarily awarded only $4,000. We disagree and affirm.

## BACKGROUND

In May 2012, an SCIF claims adjuster became suspicious Bivens was submitting fraudulent disability claims after Bivens failed to document attending certain required medical appointments.[1] SCIF thereafter approved an investigation by its Special Investigative Unit (SIU) into the legitimacy of Bivens's claims. The SIU determined it needed to surveil Bivens, but because it has no internal surveilling resources, it hired Paul Chance Investigations (Chance), a third party investigator, to surveil Bivens and obtain evidence she was engaging in activities she claimed she could not perform. Chance deployed a team of four investigators to surveil and videotape Bivens's activities over several days. SCIF testified that although normally investigations require only one investigator, occasionally circumstances warrant a team of investigators. According to SCIF, Chance recommended it surveil Bivens with a team, rather than an individual investigator, because Bivens lived in a crowded area of Los Angeles, heavy with traffic, and Bivens was a fast driver, conditions which would make Bivens a difficult target to follow. Chance's investigators eventually caught Bivens on film engaging in activities she alleged she could not do. SCIF submitted the film to a doctor who determined Bivens's disability claims were unjustified. SCIF consequently terminated Bivens's disability payments.

After SCIF terminated Bivens's disability payments, Bivens's attorney requested SCIF reinstate her disability payments. SCIF spent at least an additional $11,000 looking

---

[1] SCIF is the third party administrator for workers compensation insurance for various government entities, including the California Department of Justice. Bivens worked at the Department of Justice when she filed her disability claims.

into reinstating the payments, but concluded its original decision to terminate the payments was correct. At the conclusion of the investigation, SCIF determined Bivens had defrauded SCIF in the amount of $4,000.

On July 10, 2013, the People filed a complaint for three counts of insurance fraud under Penal Code section 550, subdivision (b)(1) and one count of grand theft of personal property under Penal Code section 487, subdivision (a). Bivens and the People reached a plea agreement whereby Bivens pleaded guilty to one count of felony insurance fraud in exchange for the People reducing her felony to a misdemeanor if she completed 250 community service hours and repaid SCIF the $4,000 she stole. Bivens completed her community service and paid SCIF $4,000, and the court reduced her conviction to a misdemeanor. At the scheduled restitution hearing, SCIF argued it was entitled to $34,154.70 in restitution, in addition to the $4,000 Bivens already paid, due to the investigative costs it incurred determining the falsity of Bivens's claims. After hearing argument, the court found "extraordinary and compelling circumstances" justified reducing SCIF's requested restitution amount to $4,000. The People appealed.

## DISCUSSION

On appeal, the People argue the court erroneously reduced SCIF's requested restitution and arbitrarily calculated the restitution award.

We review a trial court's order awarding reduced restitution for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) "Trial courts have broad discretion to order victim restitution and such an order will not be reversed if there is a 'factual and rational basis for the amount of restitution.' " (*People v. Rubics* (2006) 136 Cal.App.4th 452, 462.) Although the trial court "is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992.) "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make

3

a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.)

We reject Bivens's argument the People forfeited its appeal because the prosecutor did not specifically object at trial to the court's improper method of calculation. The record unambiguously demonstrates that the prosecutor objected at length to the trial court's reduction of SCIF's restitution, and we will not reject the People's appeal of the reduced award merely because the prosecutor did not precisely identify an erroneous calculation as the reason for objecting to the reduction. (See generally *People v. Partida* (2005) 37 Cal.4th 428, 435 [an objection must "fairly inform" the court and opposing party of the basis for the objection].)

## A. SCIF was a victim constitutionally entitled to restitution

The California Constitution grants victims the right to restitution. Article I, section 28, subdivision (b)(13)(B) requires that "[r]estitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." Penal Code section 1202.4, subdivisions (a)(1) and (g) extends that right to the "full" amount of "economic loss as a result of the commission of a crime." Insurance Code section 1871.4, subdivision (b) specifies that for insurance fraud, restitution may include "the costs of investigation at the discretion of the court."

SCIF is a quasi-state entity. "Although a public agency generally may not recover law enforcement costs under section 1202.4 (*People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1076–1077), a victim may recover out-of-pocket expenses for assisting with the investigation and prosecution of the victim's case as these 'expenses clearly constitute "economic loss incurred as the result of the defendant's criminal conduct." ' " (*People v. Sy* (2014) 223 Cal.App.4th 44, 64.) A quasi-state entity like SCIF is properly considered a "victim" when, as here, it unknowingly honors fraudulent claims. (Pen. Code, § 1202.4, subd. (k)(2) ["For purposes of this section, 'victim' shall include all of the following: [¶] . . . [¶] (2) A . . . governmental subdivision, agency, or instrumentality . . . when that entity is a direct victim of a crime"]; see also *People v. O'Casey* (2001) 88 Cal.App.4th 967, 970–973 [awarding the Fireman's Fund Insurance Company

4

$10,000 in restitution, in part, for investigative costs associated with determining workers compensation claims were fraudulent].)

**B.      The court had the power to reduce SCIF's requested restitution and reasonably did so**

Although SCIF was entitled to request the restitution it did, the court also had the power to reduce the amount if "compelling and extraordinary reasons" warranted a lesser award and the court stated "those reasons on the record." (Pen. Code, § 1202.4, subd. (g); see also Ins. Code, § 1871.4, subd. (b) [the "*court* shall determine the amount of restitution," italics added].)[2]

The trial court had "compelling and extraordinary reasons" for not granting SCIF's full restitution request because the amount was unreasonably high. SCIF incurred $34,154.70 in investigative expenses, more than 8.5 times the $4,000 Bivens stole. Although SCIF presented some testimony supporting that documenting the necessary evidence to discredit Bivens required a team of investigators tailing Bivens over multiple days, as the trial court noted, this type of expensive, extensive "counter-surveillance" is more appropriate for the likes of the "Medellin Cartel." In addition, SCIF testified that "[t]here is not a limit" on investigative expenditures, and as Bivens's trial counsel opined, without limiting parameters, "why not" spend and then ask for "a million dollars?" We agree. Allowing SCIF to recover economic losses it incurred from its own self-initiated and self-directed investigations, no matter how unreasonable, would give it a perverse incentive to expend unlimited funds investigating every claim to the highest degree.

There is nothing in the governing statutes or case law which requires a court to unquestioningly accept the victim's reported losses, and the trial court may reduce the

---

[2] One of the trial court's stated reasons on the record for reducing SCIF's award was that it believed the investigative funds SCIF expended were taxpayer dollars. The court was mistaken, however. SCIF is a quasi-government agency, created by the Legislature, but funded through private premiums. SCIF therefore was expending its own funds on the investigation, not the taxpayers' funds. In any event, the court's mistaken assumption was not dispositive. The court explicitly held it was "taking into account all the evidence" when finding extraordinary and compelling circumstances warranted lessening the award.

requested restitution. (*People v. Atkins* (2005) 128 Cal.App.4th 1376, 1381–1385.) In such a case, a "trial court is not required to order restitution equal to the exact amount of the loss, but it must employ a rational method that makes the victim *reasonably* whole." (*People v. Garcia* (2011) 194 Cal.App.4th 612, 617, italics added.) Here, the vast discrepancy between the amount Bivens defrauded SCIF and the amount SCIF spent investigating Bivens's fraud was reason for the trial court to reduce SCIF's requested award to an amount that would make SCIF "*reasonably* whole."

The People counter that SCIF is legally obligated to investigate fraud and expended what was necessary to uncover Bivens's deception. It asserted that by reducing SCIF's restitution, the court was essentially ruling SCIF could perform "not too good of a job" of the investigation it was required to undertake. We disagree. To start, SCIF did not prove it expended only what was necessary to uncover the fraud. For example, SCIF spent at least *$11,000* investigating Bivens's case *after* it determined Bivens was no longer entitled to payments, stopped making payments, and turned the matter over to law enforcement. SCIF makes no compelling argument this amount was "necessary" to uncover the fraud or to more significantly substantiate it. As a quasi-state agency, SCIF has a duty not to create waste, and further investigating a case it already determined to be fraud and had turned over to law enforcement is wasteful. Additionally, any directive SCIF has to investigate fraud does not entitle it to spend any amount imaginable and then expect that exact figure in restitution. While we agree SCIF must be made reasonably whole from the losses it incurred investigating Bivens's fraud, we do not agree that reducing an extraordinary request for restitution prevents SCIF from properly performing its investigative function. Finally, SCIF does not appear to have taken care in its calculations. At trial, SCIF admitted on cross-examination that, due to a calculation error, its submitted payment schedule indicated that it had expended $27,862 even though

6

SCIF had actually incurred $34,154.70. As a general matter, such carelessness does not give us confidence SCIF was prudent in accurately representing its losses.[3]

The trial court did not abuse its discretion by reducing SCIF's award to an amount more commensurate with the cost of investigating a $4,000 fraud claim.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.


LUI, J.


We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

[3] In addition, the People represented at one point in its appellate briefing that the restitution figure it presented at trial was $34,754.70. The reporter's transcript states, however, that the trial figure was actually $34,154.70. The People also used the $34,154.70 figure at other points in its briefing.