Filed 1/20/21  P. v. Martin CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B300170 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA138957) |
| v. | |
| ANTHONY MARTIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tammy Chung Ryu, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Susan Sullivan Pithey, Assistant Attorneys General, David E. Madeo and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Martin (defendant) appeals from a restitution order entered after defendant pleaded no contest to one count of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) on Terria Cooley (Cooley).[1] Defendant argues that the restitution order was not supported by the evidence because the payments were partially related to an alleged earlier incident between the two individuals.

Defendant did not present any evidence at the hearing to overcome the presumption that payments made by the California Victim Compensation Board (Board) were a result of his conduct. Further, the evidence in the record supports the court's restitution order. Therefore, we affirm the order.

## STATEMENT OF FACTS[2]

On November 5, 2015, defendant was driving Cooley to the service department at George Chevrolet, where Cooley's truck was being repaired. Cooley believed that defendant was on PCP. Cooley and defendant had known each other for 10 to 12 years, and had been dating for about a year.

Defendant told Cooley that he needed to pull over but did not provide her with a reason. Defendant pulled his car over and parked near Compton Boulevard and Pearl Avenue. Defendant removed a metal baseball bat from his trunk, opened the passenger door, and pulled Cooley out of the front passenger seat. Cooley tried unsuccessfully to run. Defendant held her with one

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

[2]     Defendant entered a no contest plea pursuant to *People v. West* (1970) 3 Cal.3d 595. Therefore, the facts in this section are taken from the February 18, 2016 preliminary hearing.

hand and used his other hand to hit her three to four times on the left shoulder with the bat.  Defendant hit her harder than she had ever been hit before.  Cooley felt excruciating pain and started to feel faint.  She screamed.  Defendant pushed her to the ground, got back in his car, throwing liquid out the window as he drove away.

Cooley called police and was transported to the hospital.  The assault resulted in nerve damage, for which Cooley received physical therapy and may need surgery.  At the time of the preliminary hearing, she had numbness in her fingers.

The police report indicated that defendant was Cooley's cousin, however, Cooley testified that was a mistake, and she tried to clarify that defendant was her boyfriend, not her cousin.  When Detective Sarah Dieguez interviewed Cooley on November 17, 2015, Cooley said that defendant was her cousin and did not indicate that they were dating.  Detective Dieguez interviewed Cooley again on November 23, 2015.  Cooley did not inform Detective Dieguez that defendant was her boyfriend until February 2, 2016.

Cooley testified on cross-examination that she had previous arrests and convictions for theft-related offenses between 2000 and 2009, including a conviction for grand theft, an arrest for robbery, an arrest for first-degree burglary, and two convictions for petty theft with a prior.

In 2015, a few months after Cooley and defendant started dating, Cooley was arrested for domestic violence.  She and defendant were arguing when one of defendant's associates got involved and began choking her.  She defended herself but was arrested because one of the men involved had scratches on his hands.

## PROCEDURAL HISTORY

In a one-count information filed on March 3, 2016, it was alleged that on November 5, 2015, defendant assaulted Cooley with a bat, in violation of section 245, subdivision (a)(1). On February 18, 2016 Cooley and Detective Dieguez testified at defendant's preliminary hearing.

On April 20, 2016, the trial court granted the prosecution's motion to amend the information to add count two, charging defendant with assaulting Cooley with force likely to cause great bodily injury in violation of section 245, subdivision (a)(4), on November 5, 2015. The same day, pursuant to a plea agreement, defendant pled no contest to count 2. Count 1 was dismissed and defendant was placed on formal probation for a term of three years. Defendant was also ordered to pay restitution pursuant to section 1202.4, subdivision (f).

On April 12 and 19, 2019, the court held a contested restitution hearing. On April 12, 2019, Board restitution specialist Krystina Dailey testified, explaining that crime victims can apply to the Board for reimbursement of mental health, medical, wage loss, and burial expenses. Dailey presented a packet requesting restitution for Cooley's expenses totaling $6,980.72, with supporting documentation. The documents listed the "date of occurrence" or "date of current injury" as either October 12, 2015, or November 5, 2015. The Board's verification unit reviewed the claims for restitution to ensure they were "reasonably related to the underlying crime."

Defense counsel argued that the October date listed on the forms predated the charged incident, which raised a question about whether the expenses were a result of the charged crime. The court acknowledged the discrepancy and ordered the medical

bills and doctor submissions for in camera review, so it could attempt to determine why there were two dates.

The restitution hearing continued on April 19, 2019. The trial court had conducted an in camera review of the many documents submitted by the Board, and indicated that according to the records, Cooley claimed a prior incident of domestic violence involving defendant on October 12, 2015. The trial court stated that the mental health counseling, as well as the physical therapy that Cooley received, pertained to both incidents. The court stated that "[one] cannot separate [the two incidents]. They're reasonably related and close in time." The trial court agreed that Cooley did not report the prior alleged domestic violence incident in the police reports related to the November 5, 2015 incident. However, the trial court relied on the pre-plea report which stated that Cooley had mentioned two or three prior incidents of domestic violence.[3]

After hearing the arguments of the parties, the trial court ordered defendant to pay the Board a total of $6,815.72 in restitution for Cooley's bills for physical therapy and mental health counseling.

On June 5, 2019, Cooley filed a timely notice of appeal from the trial court's restitution order.

---

[3]     The trial court disallowed restitution for dental work because Cooley's injuries upon discharge from the hospital for the charged crime did not match the dental work she later received. Although the hospital paperwork indicated she had fractured teeth, it did not say her teeth were missing. The court found an insufficient nexus between the crime and her dental treatment.

5

**DISCUSSION**

Defendant contends that Cooley's unsubstantiated claim of prior domestic violence is not sufficient to support the trial court's order that defendant pay for economic losses related to the alleged prior domestic violence. Defendant requests that the restitution order be stricken and the matter remanded for a new hearing and issuance of a pro rata restitution order.

## I. Applicable law and standard of review

The California Constitution vests in "all persons who suffer losses as a result of criminal activity . . . the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) "By its very terms, this provision expresses the 'unequivocal intention of the People of the State of California' that 'every victim who suffers a loss shall have the right to restitution from those convicted of the crime giving rise to that loss.'" (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 784 [citations omitted] (*Selivanov*).)

Section 1202.4 implements the "broad constitutional right to restitution." (*Selivanov, supra,* 5 Cal.App.5th at p. 784.) It provides, "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Section 1202.4 mandates restitution, providing that the court "shall" order the defendant to pay "[r]estitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment." (§ 1202.4, subd. (a)(3)(B).) Subdivision (f) provides: "in every case in which a victim has suffered economic loss as a result of the defendant's *conduct*, the court shall require

6

that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f), italics added.)  It further specifies that restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including . . . (B) Medical expense[,s and] (C) Mental health counseling expenses." (§ 1202.4, subd. (f)(3).)  When, as a result of the defendant's conduct, the victim receives assistance from the Board, "the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A).)

The amount of assistance provided "shall be established by copies of bills submitted to the [Board] reflecting the amount paid by the [B]oard." (§ 1202.4, subd. (f)(4)(B).)  Certified copies of these bills, "together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the [B]oard, shall be sufficient to meet this requirement." (§ 1202.4, subd. (f)(4)(B).)  A defendant "may be liable for restitution for injuries caused by his conduct even if other causes contributed to the injuries." (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 101 (*Lockwood*).)  In addition, restitution may be proper "even when the loss was not necessarily caused by the criminal conduct underlying the conviction," but "where the loss was caused by related conduct not resulting in a conviction." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

Under this statutory framework, once the Board has determined that a victim's expenses were caused by the defendant's criminal conduct, "the defendant's conduct is presumed to be *a* cause in fact of the Board's payment." (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) This framework thus "imposes upon defendant the burden to prove the nonexistence of the presumed fact – that is, to prove his conduct is *not* a cause in fact of the Board's payment." (*Ibid., citing* Evid. Code, § 606.)

Thus, since the presumption affects the burden of proof, "a defendant challenging the presumption cannot prevail unless he establishes that his conduct did not cause the victim's injuries." (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) To do so, the defendant must produce evidence "to prove his conduct is *not* a cause in fact of the Board's payment." (*Ibid.*)

Where there is conflicting evidence as to the cause of the damage, we review the conflicting evidence under the substantial evidence standard. (*People v. Rubics* (2006) 136 Cal.App.4th 452, 462 [disapproved on other grounds in *People v. Martinez* (2017) 2 Cal.5th 1093, 1103-1104].) Under that standard, "[i]f there is some evidence to support the court's ruling, disputed or not, we will affirm the court's order." (*Ibid.*)

## II. Defendant presented no evidence to rebut the presumption that he caused the losses

When, as a result of the defendant's criminal conduct, the victim receives assistance from the Board, "the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A).) The Board may establish the amount of assistance provided with certified

copies of the bills, together with a statement, made under penalty of perjury by the custodian of records. (§ 1202.4, subd. (f)(4)(B).) There is no dispute that these requirements were met in this case, creating a presumption that the amount of assistance provided by the Board to Cooley was a direct result of defendant's criminal conduct.

In order to rebut this presumption, defendant was required to establish, by presentation of conflicting evidence, that his conduct did not cause the victim's injuries. (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) Defendant presented no evidence at all at the restitution hearing. Therefore, there existed a statutory presumption that his conduct caused the victim's losses which the Board reimbursed. Due to the statutory presumption, the trial court had no discretion to deny the Board's claim for reimbursement. (§ 1202.4, subd. (f)(4)(A).)

## III. The evidence supported the trial court's restitution order

The record shows that the trial court took extra care in reviewing in camera voluminous records to determine the amount of restitution for the different dates. Defendant thus received an even greater level of review than that to which he was entitled. (*Lockwood, supra,* 214 Cal.App.4th at p. 101.)

The question of whether the defendant was required to reimburse the Board is governed by the "substantial factor" test for proximate cause of the victim's loss. (*Lockwood, supra,* 214 Cal.App.4th at p. 102.) This standard is broad, requiring only that "'"the contribution of the individual cause be more than negligible or theoretical."'"" (*Ibid.*) The evidence provided by the pre-plea report, in which Cooley reported prior incidents of domestic violence, along with the certified copies of the bills,

provided sufficient evidence that defendant's conduct contributed to Cooley's expenses in a way that was more than negligible or theoretical.

Further, even if certain expenses were partially attributable to another cause, the trial court found that such expenses were inseparable from those incurred as a result of the November 5, 2015 incident. Whether some of the expenses incurred were partially attributable to another cause does not absolve defendant of the responsibility of reimbursing those expenses. (*Lockwood, supra,* 214 Cal.App.4th at p. 101.) This is true even if the contributing incident did not result in a criminal conviction. (*People v. Carbajal, supra,* 10 Cal.4th at p. 1121.)

The evidence in the record, although disputed by defendant, supports the trial court's order. (*People v. Rubics, supra,* 136 Cal.App.4th at p. 462.)[4]

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:

_____, P. J.  _____, J.
LUI                             HOFFSTADT

---

**4**     We reject defendant's arguments concerning Cooley's credibility as we do not consider credibility on appeal, as that is within the exclusive realm of the trial court. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)