Filed 9/13/22 P. v. Hoffman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092690 |
| v. | (Super. Ct. No. CR20192875) |
| STEVEN BRADLEY HOFFMAN, | |
| Defendant and Appellant. | |

Defendant Steven Bradley Hoffman pleaded no contest to theft or embezzlement of property belonging to an elder or dependent adult (his father). (Pen. Code, § 368, subd. (e).)[1] In exchange, the prosecution agreed to dismiss two pending charges of grand theft of property exceeding $950 in value (§ 487, subd. (a)) with a waiver of defendant's rights under *People v. Harvey* (1979) 25 Cal.3d 754.

The trial court sentenced defendant to four years in prison to be served locally, including one year of mandatory supervision. It also ordered him to pay victim

---

[1] Undesignated statutory references are to the Penal Code.

1

restitution of $1,203,845.67 to his father's court-appointed conservator, and subsequently amended the restitution order after the father died to name defendant's stepmother as the recipient of the restitution.

Defendant now contends (1) the evidence is insufficient to support a portion of the restitution award, (2) it was error to amend the restitution order to name the stepmother as a restitution victim without determining her actual losses attributable to the crime, and (3) one of the conditions of mandatory supervision indicated that it was "TBD" (to be determined) and hence must be modified.

Finding merit in defendant's second and third contentions, we will remand the matter so the trial court can determine the stepmother's economic losses attributable to defendant's crimes, and we will modify the challenged condition of defendant's mandatory supervision. We will affirm the judgment as modified.

BACKGROUND

We limit our recitation of the background to the circumstances relevant to defendant's contentions on appeal.

A

An employee of the Yolo County Public Guardian's office testified at a hearing to determine victim restitution. (§ 1202.4.) The public employee testified her office became the court-appointed conservator of the person and estate of defendant's father. She said defendant had power of attorney for the father. At the time of appointment, the conservator took steps to understand the father's funds and assets.

The conservator determined that when defendant obtained power of attorney, the father had more than $950,000 in an Exxon retirement account, but when the conservator was appointed, the balance of the Exxon account was zero. The conservator determined the father also lost over $78,000 associated with a Chase bank account and over $4,000 associated with a Wells Fargo bank account. In addition, a Capitol One credit card had a balance of over $10,000, and a Discover Card had a balance of over $7,000. The father

also owed over $3,000 to Allstate insurance in connection with a January 2019 car accident involving defendant.

Regarding the Chase account losses, roughly $41,000 resulted from withdrawals by defendant and roughly $37,000 resulted from online transfers from the bank account to unknown bank accounts that were not owned by the father and that did not appear to be legitimate payments for the father's needs. As for the $37,000 in online transfers, the conservator did not know if defendant owned the accounts to which the funds were transferred and did not know who might have had access to the Chase account. But the public employee agreed that a number of withdrawal slips indicated that some withdrawals might have been for the father's bills and the conservator did not include those funds in its economic loss calculations.

After Chase decided not to do business with defendant and his father anymore, someone with the same name as defendant opened the Wells Fargo account in the father's name and with defendant's name listed as having power of attorney. Monthly income that previously went to the Chase account was deposited to the Wells Fargo account and then withdrawn.

The conservator calculated that the father had $1,203,845.67 in economic loss. Defense counsel argued that nobody knew where the $37,000 in online transfers from the Chase account went. Counsel said not every withdrawal could be connected to defendant's wrongdoing because bills were being paid and money was legitimately spent. Defense counsel also took issue with the credit card balances, arguing there was no testimony about how the balances were incurred, and thus they were not necessarily attributable to defendant's offense. But the trial court concluded the amount requested was reasonably related to the events leading to the conviction and ordered defendant to pay victim restitution of $1,203,845.67 to the conservator.

After the father died, the conservator asked the trial court to change the restitution recipient from the conservator to the stepmother on the ground that the restitution

3

judgment was community property. Defendant opposed the request. Rather than substituting the stepmother in place of the conservator as the conservator had requested, the trial court added the stepmother, nunc pro tunc, as another restitution victim.

B

A probation officer's report said defendant admitted he was addicted to gambling, but that he denied using the father's funds for his habit. At sentencing, the trial court sentenced defendant to four years in prison to be served locally, with the last year to be served on mandatory supervision. Among other things, the trial court referenced paragraph 23 of the order for county mandatory supervision that the trial court and defendant signed. That paragraph prohibited gambling by defendant. In addition, paragraph 5 of the mandatory supervision terms and conditions document stated that defendant was required to complete any counseling or educational program recommended by the probation officer "to address the criminogenic needs of **TBD**." (Boldface & underscore in original.) Defense counsel did not object to the terms and conditions of mandatory supervision reflected in the document.

DISCUSSION

I

Defendant contends the evidence is insufficient to support a portion of the restitution award. Specifically, he argues there was no evidence that the nearly $50,000 related to the online transfers from Chase, the Discover card, and the amount owed to Allstate, were losses arising from his conviction.

When a victim incurs economic loss as a result of a crime, the victim is entitled to restitution from the person convicted of that crime. (§ 1202.4, subd. (a)(1).) Though a victim generally is not entitled to restitution for an economic loss arising from activity for which the defendant was not convicted (*People v. Percelle* (2005) 126 Cal.App.4th 164, 180; *People v. Rubics* (2006) 136 Cal.App.4th 452, 460, overruled on other grounds in *People v. Martinez* (2017) 2 Cal.5th 1093, 1107, fn. 3), "[w]hen the defendant enters a

4

negotiated disposition, with counts dismissed subject to a *Harvey* waiver, the court can consider the dismissed counts for purposes of sentencing and restitution. [Citations.]" (*People v. Hume* (2011) 196 Cal.App.4th 990, 996.)

Restitution for economic loss arising from the crime for which defendant was convicted must be in an amount established by the trial court based on the amount claimed by the victim or any other showing to the court. (§ 1202.4, subd. (f).) Once the People have made a prima facie showing of economic loss resulting from defendant's unlawful conduct, the burden shifts to the defendant to demonstrate that the restitution amount is not proper or should be different. (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172 (*Chappelone*).)

Regarding the necessary prima facie showing, "it is well settled that 'statements by the victims of the crimes about the value of the property stolen constitute "prima facie evidence of value for purposes of restitution." ' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 690.) If the thief has disposed of the property and is, like the victim, ill positioned to provide an accounting of the property taken, it is a situation of the thief's own making, and as between the victim and the thief, the equities favor the victim. (*Id*. at p. 691.)

The trial court may not make an order that is arbitrary or capricious. (*Chappelone, supra*, 183 Cal.App.4th at p. 1172.) We review the trial court's restitution order for abuse of discretion. (*Id*. at p. 1173.) Where there is a factual and rational basis for the order, an abuse of discretion will not be found. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) In determining whether there is a factual basis for the order, we apply the substantial evidence standard. (*Ibid*.) But "the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we

5

determine whether there is sufficient evidence to support the inference drawn by the trier of fact.  [Citations.]"  (*People v. Baker* (2005) 126 Cal.App.4th 463, 469 (*Baker*).)

Defendant argues there was insufficient evidence to show that roughly $37,000 in online transfers from the Chase account to unknown bank accounts not owned by the father were attributable to defendant.  Defendant maintains that the public employee who testified at the restitution hearing "did not know who made the transfers, who owned the accounts into which these funds were transferred," and "who else, besides [defendant], had access to the account information."  Citing the preliminary hearing transcript, defendant observes that other family members must have had access to the Chase account because others were paying the father's bills with the Chase account before defendant took over.

The trial court did not abuse its discretion, as there is a factual and rational basis for the order of restitution for the roughly $37,000 in online transfers from the Chase account.  Defendant does not dispute that he stole nearly $1,000,000 from his father's Exxon retirement account, over $4,000 from his father's Wells Fargo account, and roughly $41,000 in non-online transfers from the Chase account (mostly cash withdrawals in defendant's name).  That defendant stole from multiple distinct pots of his father's money, including cash withdrawals from the very same Chase account at issue here, supports a rational inference that defendant also stole the roughly $37,000 that was transferred online from that account.  That the trial court could have made different reasonable inferences does not require reversal.  (*Baker, supra*, 126 Cal.App.4th at p. 469.)

Further, we reject defendant's invocation of evidence from the preliminary hearing, as defendant has not demonstrated that the preliminary hearing transcript was admitted into evidence at the restitution hearing.  Defendant provides no authority for the proposition that, simply because the preliminary hearing transcript was used as a factual

6

basis for his no contest plea, it became restitution evidence even though neither party sought to admit it.

Defendant also argues there was insufficient evidence that the unpaid Discover card balance of over $7,000 was attributable to him. He argues he was never an authorized user on the account, the account was opened in the 1990's, and no evidence was presented that any transactions on the account were made during the period when defendant stole from his father.

The trial court did not abuse its discretion, as it is undisputed on appeal that defendant was responsible for an unpaid balance of over $10,000 associated with a Capital One credit card that belonged to his father. The fact that defendant misused one credit card belonging to his father supports the inference that he misused the other credit card. That the trial court could have made different reasonable inferences does not require reversal.

In addition, defendant argues there was insufficient evidence linking the roughly $3,000 owed to Allstate to defendant's crime because there was no evidence regarding the circumstances of the traffic accident or that the insurance circumstances had anything to do with defendant's theft. But the argument is forfeited because defendant did not raise it at the restitution hearing. (See *People v. Anderson* (2010) 50 Cal.4th 19, 26, fn. 6 ["Defendant has waived a claim of error as to the amount of restitution by failing to object on that ground in the trial court."]; *People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 ["A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal."].)

Although defendant also invokes the federal Constitution in challenging the trial court's restitution order, he provides no separate argument regarding the ostensible violation of his federal rights. Accordingly, we have limited our analysis to developed argument. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should

7

contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "].)

## II

Defendant next claims it was error to amend the restitution order to name the stepmother as a restitution victim without determining her actual losses attributable to the crime. The People agree.

"Article I, section 28 was added to the California Constitution by initiative measure adopted by the voters June 8, 1982. Subdivision (b) provides, in part, 'that all persons who suffer losses as a result of criminal activity shall have the right to restitution' and that '[r]estitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section.'

"Implementing legislation was added to Penal Code section 1202.4 that now provides, in relevant part that 'the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.' (§ 1202.4, subd. (f).)" (*People v. Bufford* (2007) 146 Cal.App.4th 966, 969-970, fn. omitted (*Bufford*).)

"Section 1202.46 specifically provides that 'when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution

8

order for purposes of imposing or modifying restitution until such time as the losses may be determined. Nothing in this section shall be construed as prohibiting a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine without a finding of compelling and extraordinary reasons pursuant to Section 1202.4.' " (*Bufford, supra*, 146 Cal.App.4th at p. 970.)

Here, following the father's death, the court-appointed conservator of the estate of the father asked the trial court to change the restitution recipient from the conservator to the stepmother. But the trial court instead *added* the stepmother, nunc pro tunc, as another restitution victim. While the trial court may be correct that the stepmother sustained her own losses as a result of defendant's criminal conduct, the Attorney General agrees the matter should be remanded for a hearing to determine the actual amount of the stepmother's losses. Accordingly, we will vacate the trial court's April 2021 order identifying the restitution amount owed to the stepmother and remand for further proceedings.

III

In addition, defendant claims one of the conditions of mandatory supervision indicated that it was "TBD" (to be determined). He argues the condition is overbroad and improperly delegates judicial decision-making power.

We review the trial court's imposition of conditions of mandatory supervision for abuse of discretion, analyzing "the validity of the terms of supervised release under standards 'parallel to those applied to terms of parole.' " (*People v. Malago* (2017) 8 Cal.App.5th 1301, 1306.) Parole is meant to help individuals reintegrate as law-abiding and constructive members of society. To further that goal, the state may impose any condition reasonably related to that goal. (*Ibid.*)

A defendant who does not challenge the reasonableness of a probation condition in the trial court forfeits the ability to do so on appeal. (*In re Sheena K.* (2007) 40 Cal.4th

9

875, 882.) Recognizing that defendant did not object in the trial court to the condition he challenges on appeal, here he asserts only a facial challenge to the condition. He may do so. (*Id.* at pp. 887-889.)

"It is well settled that courts may not delegate the exercise of their discretion to probation officers." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372.) For example, in *People v. Cervantes* (1984) 154 Cal.App.3d 353, the trial court ordered the defendant to pay restitution "in an amount and manner to be determined by the probation officer." (*Id.* at p. 355.) On appeal, the court held that the trial court improperly delegated "unlimited discretion to a probation officer to determine the propriety, amount, and manner of payment of restitution," noting, "these determinations are essentially judicial functions." (*Id.* at p. 358.) Similarly, in *People v. O'Neil* (2008) 165 Cal.App.4th 1351, the trial court ordered the defendant, who was convicted of possession of narcotics for sale, to refrain from "associating with persons designated by his probation officer." (*Id.* at p. 1354.) The appellate court held this also amounted to an improper delegation of unlimited discretion to the probation officer because the condition "did not in any way define the class of persons who could be so designated." (*Id.* at p. 1358.) The appellate court continued: "While the [trial] court may well have anticipated that the probation officer would specify individuals known to be using or dealing in illicit drugs, . . . 'this factor should not be left to implication.' [Citations.]" (*Ibid.*)

Here, the challenged condition orders defendant to "complete any counseling or educational program recommended by the Probation Officer, specifically to address the criminogenic needs of **TBD**," but does not define the type of counseling or education defendant is to obtain, instead giving the probation officer unlimited discretion to select not only the specific counseling program (see *People v. Penoli* (1996) 46 Cal.App.4th 298, 308 [delegation of authority to probation officer to select specific drug rehabilitation program upheld because "trial court is poorly equipped to micromanage selection of a program"]), but also the type of counseling or treatment defendant is to receive.

10

Defendant urges us to replace the word "criminologic" with "gambling, theft or embezzlement" and strike the "TBD." We will modify the challenged condition to state that defendant shall: "Participate in and complete any counseling or educational program recommended by the probation officer that addresses gambling, theft, or embezzlement."

## DISPOSITION

The order requiring defendant to make restitution to the stepmother in the amount of $1,203,845.67 is vacated. The matter is remanded so that the trial court can hold a hearing to determine the stepmother's economic losses attributable to defendant's unlawful conduct. The condition of defendant's mandatory supervision requiring him to participate in and complete counseling or educational programing is modified to provide: "Participate in and complete any counseling or educational program recommended by the probation officer that addresses gambling, theft, or embezzlement." The judgment is affirmed as modified.


                                  /S/
                                  MAURO, J.


We concur:


      /S/
ROBIE, Acting P. J.


      /S/
EARL, J.